**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

v.                                                    No. 2:23-cr-00915-MIS-1

JESUS CORONADO,

       Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR**
***FRANKS* HEARING**

       Before the Court is Defendant Jesus Coronado's Motion to Suppress and Request for

*Franks* Hearing, filed on August 11, 2023. ECF No. 94. The Government filed a Response on

September 8, 2023, ECF No. 107, to which Defendant replied on November 17, 2023, ECF No.

116.  After considering the parties' submissions and the relevant law, the Court will **DENY** the

Motion.

## I.      BACKGROUND

       Defendant faces two counts related to his being a felon in possession of a firearm: a

violation of 18 U.S.C. § 922(g)(1) and a violation of § 924 under the same Title. ECF No. 99. The

following events leading up to Defendant's arrest and indictment are alleged by the Government:

       On the night of December 11, 2021, Defendant's ex-girlfriend called Las Cruces Police to

report that Defendant had parked a white Ford F-150 pickup next to her outside of a smoke shop

and threatened her with a gun. ECF No. 107 at 2. After the driver of the car she was in drove away,

Defendant followed them in the F-150, eventually rear-ending their vehicle before departing. *Id*;

ECF No. 94 at 1. Las Cruces police officers then received a warrant for the Defendant's arrest on

charges of aggravated assault. *Id*. While patrolling the neighborhood, police officers discovered

the pickup parked in the driveway of 1425 Durazno Street. *Id*. Officers then determined that the vehicle had been stolen. *Id*. at 2-3.

1425 Durazno is a multi-residential housing complex, with a casita ("Unit 3") in the back. *Id*. at 3. When police discovered the stolen vehicle, they ordered the occupants of Unit 3 to come outside, and four individuals exited the residence: Adria Valtierra, the lessee of Unit 3; Valtierra's two children; and Nikki Giron, Defendant's sister, who Valtierra said had arrived at Unit 3 that evening. *Id*. Valtierra denied knowledge of the truck's ownership or its presence on the property. *Id*. She also denied having given anyone else permission to be at Unit 3, and specifically denied that Defendant had recently been on the property. *Id*. Valtierra also said she "sometimes saw [Defendant] out and about but wasn't fond of him." *Id*. She did not indicate that Defendant would visit or spend any time at Unit 3. *Id*.  Defendant was not located that evening. *Id*.

On December 13, 2021, after two days of monitoring the 1425 Durazno address for Defendant, Las Cruces Police Officer Joshua Appelzoller witnessed a male matching Defendant's description in the driveway of 1425 Durazno. *Id*. at 4. After stepping out of his vehicle and ordering the man to stop, Officer Appelzoller witnessed the man duck behind a vehicle and appear to enter Unit 3. *Id*. Backup soon arrived, and police officers surrounded Unit 3 and called for the residents to exit. *Id*. Valtierra exited, along with Giron and a man named Joshua Ortega. *Id*. Defendant did not exit alongside them. *Id*.

Speaking with officers, Giron and Valtierra said they had been asleep, and "were not aware that Defendant had been there[.]" *Id*. They also reiterated that Defendant did not live at Unit 3. *Id*. Ortega told officers that he was at Unit 3 to purchase a trailer from a man he identified as Defendant, and that Defendant did not enter the residence after seeing Officer Appelzoller but instead fled around the back of Unit 3. *Id*.

2

One of the officers on the perimeter of Unit 3, Juan Gomez, entered the backyard of a neighbor (with permission) and perched partially on the fence and partially on a utility pole to provide light for a drone surveilling the back of Unit 3. *Id*. at 5. From that position, Officer Gomez observed a handgun on the roof of Unit 3 and notified other officers about it. *Id*. "Officer Gomez was aware that Defendant was wanted for a firearm-related offense." *Id*. Officer Gomez continued to hold his position, as the police surrounding Unit 3 still believed Defendant was inside the residence. *Id*.

S.W.A.T. were then called to the scene, but pursuant to their policies, would not enter the residence until a search warrant for Unit 3 was obtained. *Id*. New Mexico State District Judge Conrad Perea shortly thereafter signed a search warrant, with Sergeant Sergio Munoz serving as the affiant. *Id*. Sergeant Munoz made numerous statements at odds with the testimony of persons present at the scene in his request for the warrant. They included testifying that Ortega told officers that Defendant had entered Unit 3, and that Ortega confirmed Defendant's identity via a photograph. ECF No. 94 at 3-4. Neither of those statements were accurate. Munoz also failed to include or address the repeated statements by Ortega, Giron, and Valtierra that Defendant was not present in the apartment. *Id*. at 4.

During the time in which Sergeant Munoz was seeking a warrant, Valtierra made statements disavowing ownership of the gun. ECF 107 at 6. She also told officers they did not need a warrant because they had her permission to enter Unit 3. *Id*. Ultimately, after receiving the warrant but before S.W.A.T. agents had entered Unit 3, Las Cruces police officers received a call about a male matching Defendant's description hiding by a nearby residence. *Id*. Officers responded to that call and located Defendant, who was arrested. *Id*. Officers then retrieved the firearm from the roof. *Id*. Defendant now moves to suppress the seizure of the firearm on the

grounds that the search warrant for Unit 3 was constitutionally defective and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

## II.    STANDARD OF REVIEW

When filing a motion to suppress for violation of the Fourth Amendment, the movant bears the initial burden of demonstrating that a search and seizure implicating the Fourth Amendment occurred. *United States v. Goebel*, 959 F.3d 1259, 1265-66 (10th Cir. 2020). The burden then shifts to the Government to show that any search or seizure, if conducted without a warrant, was justified. *Id.*; *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010). Any showing by either party must be a by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) (establishing "a preponderance of the evidence" as "the controlling burden of proof at suppression hearings.").

When evaluating the evidence on a motion to suppress, "the district court must assess the credibility of witnesses and determine the weight to give the evidence presented." *Goebel*, 959 F.3d at 1265; *see also United States v. Torres*, 987 F.3d 893, 898 (10th Cir. 2021) (identifying the district judge as the "factfinder" in ruling on a motion to suppress). Any inferences the Court "draws from that evidence and testimony are entirely within its discretion." *Goebel*, 959 F.3d at 1265.).

## III.    DISCUSSION

Defendant's argument is twofold: first, he argues that he has standing under the Fourth Amendment[1] to challenge the search of Unit 3 (but, importantly, not the seizure of the firearm).

---

[1] The Court notes that the use of the term "standing" in the Fourth Amendment context has been called a "misnomer"—the analysis is not a jurisdictional one, but a substantive examination of whether a defendant has satisfied the reasonable-expectation-of-privacy test. *See, e.g., United States v. White*, 584 F.3d 935, 952 n.7 (10th Cir. 2009); *United States v. Jarvi*, 537 F.3d 1256, 1259 n.2 (10th Cir. 2008). As the Tenth Circuit has itself used the

ECF No. 94 at 4. Second, he moves to suppress the firearm on the grounds that the warrant to search Unit 3 lacked probable cause, and that the agents' seizure of the weapon therefore violated Defendant's Fourth Amendment rights. *See id*. Defendant also moves for a hearing on the deficiency of the warrant. *Id*. at 7.

The Government counters that Defendant does not have standing as to Unit 3; does not assert standing to challenge the seizure of the firearm; has not demonstrated a possessory interest in the firearm; and that the firearm's seizure was justified by both the doctrine of abandonment and the "plain view" doctrine. ECF No. 107 at 7, 14, 15. The Government also argues that there is no factual nexus between the warrant, even if improperly executed, and the seizure of the firearm. *Id*. at 7. The Government also highlights that Valtierra, the apartment's lessee, gave her consent for the officers to search Unit 3. ECF No. 107 at 7.

Here, the Court need not determine whether Defendant has standing to challenge the search of Unit 3, because the fact that Valtierra expressly consented to the officers' search of her home is dispositive in allowing for the firearm's seizure under the plain view doctrine. As a result, Defendant's request for a *Franks* hearing must be denied.

### 1.  The Firearm was Properly Seized Under the Plain-View Doctrine

The firearm's seizure was permissible under the plain-view doctrine, which provides an exception to the Fourth Amendment's prohibition of warrantless seizures of otherwise-protected property. *See Harman v. Pollock*, 586 F.3d 1254, 1264 (10th Cir. 2009). "To prevent the plain view doctrine from eviscerating Fourth Amendment protections," the Tenth Circuit has "imposed

---

term "standing" in the context of demonstrating a Fourth Amendment interest, this Court will also do so. *See United States v. Poe*, 556 F.3d 1113, 1121 (10th Cir. 2009).

a three-prong test that the government must satisfy to justify its application." *Id*. Specifically, the

government must establish that:

> (1) [T]he officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent— i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

*Id*.

As to the first factor of the test, Officer Gomez (who first witnessed the firearm on the roof)

was lawfully entitled to be positioned on the fence adjoining Unit 3, because the neighbor granted

him permission to be there. ECF No. 107 at 19. As to the second factor, Officer Gomez knew that

Defendant was being sought for a crime involving a firearm, and the incriminating nature of the

loose gun was thus immediately apparent. *Id.* at 19-20.

As to the final factor of the plain-view test, officers were legally entitled to be in the

position from which they could access the firearm. "The Fourth Amendment generally prohibits

the warrantless entry of a person's home, whether to make an arrest or to search for specific

objects. The prohibition does not apply, however, to situations in which voluntary consent has

been obtained, either from the individual whose property is searched, or from a third party who

possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)

(internal citations omitted).

"Whether voluntary consent to enter was given is a question of fact to be determined from

the totality of the circumstances." *Polston v. Allsop*, 151 F. App'x 667, 671 (10th Cir. 2005). Here,

the totality of the circumstances demonstrates that Valtierra expressly gave her consent for the

officers to access Unit 3. ECF No. 107 at 15. While Defendant argues that Valtierra only provided

her consent "[i]n order to avoid SWAT destroying her home[,]" the record does not demonstrate

that police officer's warnings to Valtierra about SWAT's potential use of chemical munitions were

coercive in nature. *See* Gov. Ex. 3 at 21:05:30-45. Indeed, the officers' conversation with Valtierra demonstrates her frustration at the potential engagement of SWAT *because* she has given the police permission to enter her home. *See id.*

Defendant also highlights that while Valtierra "consented to a search of her home[,]" she "did not consent to the search of her roof." *Id.* at 2. For a district court to admit evidence obtained from a consent search, a search cannot exceed the scope of the consent given. *United States v. Price*, 925 F.2d 1268, 1270 (10th Cir. 1991). In this instance, Valtierra's consent covered any officer access to her roof, an obvious place for law enforcement officers to search for a suspect believed to be hiding from the police. Further, Valtierra never give officers limiting instructions regarding access to her roof. The Court thus finds that officer access to the roof of Unit 3 was within the permissible scope of the access Valtierra consented to.

The entirety of Defendant's Motion to Suppress hinges on a challenge to the search of Unit 3 (and never asserts standing independently as to any seizure of the firearm, other than to obliquely note that "*if* the defendant threw the firearm on the roof top is [sic] was specifically his intent to hide it and keep from being seized"). However, as Unit 3's lessee expressly gave her consent for officers to search her property, and the firearm was thus lawfully seized pursuant to the plain view doctrine, the Motion to Suppress must be denied. ECF No. 94 at 7 (emphasis added).

## 2. Defendant is Not Entitled to a *Franks* Hearing

Defendant also moves for a hearing on the validity of the search warrant pursuant to *Franks v. Delaware*. 438 U.S. 154 (1978). *Franks* establishes that defendants are entitled to a hearing under the Fourth Amendment after making a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by

[an] affiant in the warrant affidavit," when that false statement is "necessary to the finding of probable cause[.]" *Id.* at 155.

Defendant argues that because "the attached exhibits make a substantial preliminary showing that the warrant was defective . . . this Court should set a hearing on the matter and after said hearing suppress the pistol from evidence[.]" ECF No. 94 at 9. Here, however, the firearm's seizure was permissible under the plain-view doctrine because of Valtierra's having given officers permission to search her home. As such, the validity of the search warrant has no bearing on the firearm's seizure, and no hearing is justified under *Franks*.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress and Request for Franks Hearing, ECF No. 94, is hereby **DENIED**.

_____

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE